## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CHRIS CHATTERTON,

     **Plaintiff,**

v.                                             **Civ. No. 2:12-00082-JCH-WPL**

SUMMIT FOOD SERVICES, LLC,
and A'VIANDS, LLC,

     **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Defendants Summit Food Services, LLC's ("Summit's") and A'VIANDS, LLC's ("A'viands") (collectively, "Defendants'") *Motion to Dismiss Complaint* (Doc. 7).   Defendants, dining services companies serving correctional facilities in New Mexico, contend that Plaintiff, their former employee, failed to serve the Complaint in the instant lawsuit in a timely fashion, as required by the Federal Rules of Civil Procedure.   In the alternative, Defendants contend that Plaintiff's Complaint should be dismissed for failure to state a claim.   The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that Plaintiff should be afforded an opportunity to amend the various defects identified by Defendants.   Accordingly, Defendants' motion will be denied.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### <u>The Complaint</u>

On January 26, 2012, Plaintiff filed the Complaint in the instant case.   The Complaint

does not list Plaintiff's causes of action in a specific manner, with clarity as to each claim.

Rather, it sets forth eleven paragraphs of factual allegations describing the deterioration of

Plaintiff's working relationship with representatives of Defendants, her employers.  Specifically,

Plaintiff recites how she worked as a Food Service Director at several state-run correctional

facilities operated by Defendants between 2005 and 2010.  According to Plaintiff, she was in

good standing with her employers until November 3, 2010, when, while on duty, she "pulled a

box off of a shelf and a twenty[-]pound ham fell off the shelf and landed on her right foot,

causing a fracture."  (Doc. 1 Cplt. ¶ 7).  Plaintiff further recites how, after she filed a worker's

compensation claim, she began to be written up for a series of alleged infractions – which cited

her for issues related to her personal conduct and kitchen sanitation violations – that culminated

in Plaintiff's being issued a final warning and eventually terminated.  The Complaint concludes

that Defendant's behavior towards her "constitutes unlawful retaliation against Plaintiff for

exercising her right under the Workers' Compensation Act, in violation of NMSA 1978 § 52-1-

28.2 (2004) and against public policy of the state of New Mexico," and "unlawful discrimination

against Plaintiff because of her disability and/or perceived disability in violation of Title I of the

Americans with Disabilities Act of 1990."  *Id.* ¶¶ 14-15.  Because Plaintiff failed to set forth her

causes of action in a numbered listing, it is unclear whether this is intended to constitute an

exhaustive listing of Plaintiffs' claims.

**<u>Order to Show Cause is Issued</u>**

On May 29, 2012, Judge William P. Lynch, the U.S. Magistrate Judge assigned to this

case, issued an Order to Show Cause *sua sponte,* demanding that "no later than June 28, 2012,

Plaintiff must either effect service or provide the Court with a written explanation why service

has not been effected."  (Doc. 3).  Judge Lynch further held that, in the event that "Plaintiff fails

to respond within the time allotted, this action will be dismissed without prejudice." *Id.* citing

Fed. R. Civ. Proc. 4(m) (providing that, in the event that complaint is not served on the

defendant within 120 days after it is filed with the court, the court must either dismiss suit

"without prejudice against that defendant or order that service be made within a specified time.

But if the plaintiff shows good cause for the failure, the court must extend the time for service

for an appropriate period.").

## <u>Response of Plaintiff's Counsel to Order to Show Cause</u>

On May 31, 2012, Plaintiff filed a response to the Court's Order, in which her attorney,

Daniela Labinoti, addressed her failure to serve Defendants and declared her intention of serving

Defendants imminently.  Labinoti explained that her paralegal, a first-year law student on winter

holiday from school, filed the Complaint on her behalf while she "was on maternity leave,

learning how to be a mother, and dealing with the new challenges of parenthood."  (Doc. 4 at 3).

She added that, when her paralegal

> returned to law school after his Christmas break, he assumed that another one of
> Plaintiff's counsel's staff members would request the issuance of summons in
> order to properly effectuate service of process on [Defendants].  However, truth
> be told, only [the paralegal] knew how to request summons regarding federal
> cases.  In fact, no other staff member, nor Plaintiff's counsel, knew the process
> for requesting summons as [the paralegal] had been the designated person in
> charge of requesting summons on every federal case before he left for law school
> and during his tenure as Plaintiff's counsel's paralegal.  Plaintiff's counsel had
> assumed that he would be requesting the summons and that he would give the
> same to Plaintiff's counsel's new office staff to secure service, but clearly a break
> in communication occurred.

*Id.*  Labinoti explained that her staff had begun receiving training on the Court's system for e-

filing documents, and implored the Court to consider the facts that she is "a solo practitioner that

works on a contingency fee basis," is "a new mother," and is " new to managing an office on

[her] own" – "[w]hen you add all of these challenges together, time can become extremely

difficult and some things may fall apart." *Id*. at 6.  She concluded by representing to the Court

that "summons have been requested and due diligence will be put into practice immediately

upon issuance of the same to ensure that they be served expeditiously." *Id.* at 7.

**Service of Process is Effected on Defendant A'viands Only**

Upon Plaintiff's request, on May 31, 2012, a summons for each of the Defendants was

issued by the clerk of court.  Two weeks later, on June 15, 2012, Plaintiff personally served

Defendant A'viands.

Plaintiff does not dispute that she failed to either serve Defendant Summit or to provide

the Court with a reasonable explanation for her failure to effect service by June 28, 2012, the

deadline set forth by Judge Lynch.  However, Plaintiff now explains that she attempted to serve

Summit by and through what she "believed in good faith to be [Summit's] registered agent for

service" on June 20, 2012, but received an unexecuted return of service the following day.  (Doc.

12 at 2).  Plaintiff contends that she relied on information obtained from the New Mexico Public

Regulations Commission (PRC) in determining the identity of Summit's registered agent.[1]  Thus,

according to Plaintiff,  it was only after receiving the unexecuted return of service on June 21,

2012 that she had cause to further investigate and learn that Summit's "registered agent for

service had changed from 'NCR' to 'Business Filings Incorporated' as of April 30, 2012." *Id.*

Plaintiff did not supplement her response to the Order to Show Cause with an explanation for her

failure to effect service.

---

[1]Plaintiff does not set forth when she obtained this information from the PRC.
Defendants proffer the PRC website's "Corporation Detail" entry on Summit, which shows that
Summit filed an amendment changing its registered agent to Business Filings Inc. on August 11,
2011.  (Doc. 13 Ex. A).  It is unclear when the PRC website was updated to reflect the
amendment.

Plaintiff claims that she did not learn the identity of Summit's new registered agent until July 11, 2012, after Defendants' counsel entered an appearance on behalf of both A'viands and Summit and Defendants jointly filed the instant motion.  Plaintiff does not state whether she made any attempt to learn the correct identity of Summit's registered agent after her initial attempt at service was rejected.  Moreover, there is no indication in the record that Plaintiff ever served Summit through the correct registered agent, Business Filings Inc., after discovering the latter's identity.

## LEGAL STANDARD

### Rule 4(m)

Fed. R. Civ. P. 4(m) states that if a defendant is not served within 120 days of the filing of a complaint, a court may dismiss the action with prejudice or order that service be made within a particular time, but if the plaintiff shows good cause for the failure, the court must extend the time for service.

In the Tenth Circuit, when determining whether to extend time for service under Fed. R. Civ. P. 4(m), courts employ a two-step analysis.  *See Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995).  First, the court looks to see whether a plaintiff is entitled to a mandatory extension of time through a demonstration of good cause for failing to timely effect service.  *See id.*  If a plaintiff cannot show good cause, the court then considers whether a permissive extension of time is justified.  *See id.*  Good cause requires "some showing of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified." *Putnam v. Morris*, 833 F.2d 903, 905 (10th Cir. 1987).  Rule 4(m)'s good cause provision "should be read narrowly to protect only those plaintiffs who have been

5

meticulous in their efforts to comply with the Rule." *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1438 (10th Cir. 1994).  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  Simple "inadvertence or negligence alone do not constitute 'good cause' for failure of timely service.  Mistake of counsel or ignorance of the rules also usually do[es] not suffice." *In re Kirkland*, 86 F.3d 172,176 (10th Cir. 1996).  Similarly, "although a small delay in achieving service may not prejudice the defendant, absence of prejudice alone does not constitute good cause." *Despain*, 13 F.3d at 1439.  Ultimately, an attorney should "treat the 120 days with the respect reserved for a time bomb." *Cox v. Sandia Corp.*, 941 F.2d 1124, 1126 (10th Cir. 1991).

## Rule 12(b)(6)

Rule 12(b)(6) provides in relevant part that "failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any pleading.  A court may dismiss a cause of action under Rule 12(b)(6) for failure to state a claim only if it appears beyond a doubt that a plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief. *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993).  A motion to dismiss should be granted if, viewing the well-pleaded factual allegations of the complaint as true, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  In considering a Rule 12(b)(6) motion, a court must assume all well pleaded facts, but not conclusory allegations, to be true, and must draw all reasonable inferences in favor of a plaintiff. *See Housing Auth. of the Kaw Tribe v. City of Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991); *Maher v. Durango Metals, Inc.,*144 F.3d 1302, 1304 (10th Cir. 1998). The issue in reviewing the sufficiency of a complaint is not whether a

plaintiff will prevail ultimately, but whether a plaintiff is entitled to offer evidence to support his

or her claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). However, the rules do not

require a court to accept legal conclusions or unwarranted inferences. *See United States v.*

*Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citation omitted).

## DISCUSSION

### I. Plaintiff's Tardy Service of A'viands and Failure to Serve Summit

In his Order to Show Cause of May 29, 2012, Judge Lynch provided Plaintiff with a

permissive extension, requiring her to "either effect service *or* provide the Court with a written

explanation why service has not been effected" by June 28, 2012. (Doc. 3) (emphasis added). It

is undisputed that Plaintiff met her burden with respect to Defendant A'viands, who was served

before the Court's deadline, on June 15, 2012. Accordingly, Plaintiff's Complaint against

A'viands is not subject to dismissal on timeliness grounds.[2]

As set forth more fully above, there is no evidence in the record that Plaintiff ever served

the Complaint in this case on Summit, even after Judge Lynch's Order granted her an extension

---

[2]Because Judge Lynch granted Plaintiff a permissive extension of time, the Court need not reach the issue of whether Plaintiff would have been entitled to a mandatory extension of time through a demonstration of good cause for failing to timely effect service. *See Espinoza,* 52 F.3d at 841. However, the Court notes that Plaintiff's counsel's argument that she had good reason for failing to meet her initial 120-day service deadline is belied by her admissions that she (i) was unfamiliar with service procedures in this court, in which she has several cases pending; (ii) did not take steps to familiarize herself with these procedures, even several months after the sole member of her staff who was familiar with them left her full-time employ; and (iii) left non-attorney staff members in charge of managing her cases, while she was out on maternity leave. Plaintiff's counsel's "inadvertence or negligence . . . do not constitute 'good cause' for failure of timely service."*Kirkland*, 86 F.3d at 176. *See also Despain,*13 F.3d at 1438 (noting that "good cause" provision of Rule 4(m) "should be read narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule").

of time in which to either effect service, provide the Court with a written explanation why service had not been effected, or else face dismissal without prejudice.  (Doc. 3).  Rather, by Plaintiff's own chronology of events, she first offered the Court a pre-emptive excuse for failing to serve Defendants before attempting to serve them; then tried unsuccessfully to effect service on Summit; and then, when she received the unexecuted return of service the following day, did nothing to otherwise comply with the Court's Order.  Indeed, Plaintiff concedes that she failed to serve Summit even after learning the correct identity of its registered agent in July 2012, having apparently concluded that the Defendants' joint filing of the instant motion rendered her need to comply with the relevant Rule moot.  Because Plaintiff failed to meet Judge Lynch's requirement that she either (i) effect service or (ii) provide an explanation for her failure to do so by June 28, 2012, the Court finds that any claims against Summit should be dismissed without prejudice.[3]  However, because dismissal without prejudice is functionally similar to a grant of leave to amend, and because, for the reasons set forth below, the Court will afford Plaintiff the opportunity to amend her Complaint, the Court declines to dismiss the instant case against Summit.  Plaintiff will thus be permitted to amend her Complaint, and this time, to effect service directed to all Defendants against whom she wishes to press her claims.


## II.  Defendants' Motion to Dismiss Under Rule 12(b)(6)

Defendants argue that the Complaint in this case cannot survive dismissal on its merits,

---

[3]Plaintiff suggests that her failure to comply with the Order to Show Cause should be overlooked because Summit evidently became aware of the instant suit at some point after its parent company, A'viands, was served – as evidenced by its joining A'viands in filing the instant motion.  However, the Court notes that it is the law of this Circuit that "absence of prejudice alone does not constitute good cause" for failure to timely serve a defendant.  *Despain*, 13 F.3d at 1439.

on the grounds that Plaintiff "fail[s] to sufficiently allege why she is entitled to relief,' "fail[s] to plead any claims at all," and fails "to set forth the grounds for her entitlement to relief with more than labels or conclusions." (Doc. 7 at 4). While the Court finds that the Complaint clearly recites a number of factual allegations and mentions at least two would-be causes of action in various places in the narrative, the Court also agrees with Defendants that Plaintiff fails to delineate any of her claims in a manner that would provide her opponents "'fair notice of what [her] claim is . . . and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In her response brief, Plaintiff attempts to guide the Court through her Complaint to an understanding of her claims. She notes that she begins the Complaint with "more than four (4) pages alone of factual allegations," (Doc. 12 at 4), which she then proceeds to summarize. *See, e.g., id.* at 5 (noting that "Paragraph 5 of the [C]omplaint gives a background of when Plaintiff started with the Defendant and how her performance was good," and "Paragraph 7 talks about Plaintiff's injury and how the injury interfered with Plaintiff's major life activity 'walking'"). Plaintiff concludes that the facts alleged in her Complaint "establish a prima facie case of discrimination, where Plaintiff was written up three times and then terminated . . . after her work[-]related injury which caused her to be disabled and/or perceived as disabled." *Id.* at 7.

With respect to her specific causes of action, Plaintiff argues that Title I of the ADA is invoked at more than one place in the body of the Complaint, and that her attached EEOC charge form likewise asserts discrimination on the basis of a perceived disability in violation of Title I of the ADA. *See* Doc. 12 at 5, citing Doc. 1 Cplt. ¶¶ 1, 15, Ex. A. Plaintiff further states, in conclusory fashion, that she "has establish[ed] a prima facie case of discrimination, retaliation under . . . the NMSA 1978 section 52-1-28.2," noting that she mentions this statute at another

9

place in the Complaint.[4]  (Doc. 12 at 7).  Plaintiff's response does not indicate whether she

therefore means to set forth only two causes of action – for violation of the ADA and

discrimination and/or retaliation in violation of the NMSA.

      Plaintiff concludes that her Complaint meets the notice pleading standard of Fed. R. Civ.

P. 8(a)(2) – which requires that a pleading contain "a short and plain statement of the claim

showing that the pleading is entitled to relief" – on the argument that a complaint need only

"give [a] defendant fair notice of the essence of the plaintiff's claim."  Doc. 12 at 8, citing *Bell*

*Atlantic v. Twombly*, 550 U.S. 544 (2007).  However, nowhere in her Complaint does Plaintiff

even set forth a threadbare recital of the elements of her causes of action, let alone link those

elements to specific factual allegations in a way that would inform Defendants of "the essence"

of each of her individual claims.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements do not

suffice") (citing *Twombly*, 550 U.S. 544, 555 (2007)).  On the contrary, Plaintiff mentions two

statutes at various places in the Complaint, and leaves it to Defendants to (i) adopt the

assumption that the two referenced statutes constitute an exhaustive list of Plaintiff's claims, (ii)

investigate the elements of these causes of action, and (iii) deduce which of Plaintiff's factual

allegations might support which of her claims.

      Plaintiff's general citation of *Twombly* suggests some level of familiarity with the

Supreme Court's interpretation of the Rule 8 pleading requirement as set forth in that case,

---

    [4]While still inadequate, Plaintiff actually makes a more significant attempt to set forth a
state-law claim in the Complaint itself, which states only, after reciting her factual allegations in
full, that "[t]he aforementioned acts of the Defendant[s] constitute unlawful retaliation against
Plaintiff for exercising her right under the Workers' Compensation Act, in violation of NMSA
1978 § 52-1-28.2 (2004) and against public policy of the state of New Mexico."  Doc. 1 Cplt. ¶
14.

which has provided the legal standard for evaluating motions to dismiss under Rule 12(b)(6)

since its publication in 2007.  Plaintiff's Complaint and her response brief, however, do not

demonstrate an awareness of or adherence to the *Twombly* standard.  Specifically, while

*Twombly* held that a complaint need not contain detailed factual allegations – the absence of

which, in any event, is not among the deficiencies of the Complaint in issue – the allegations it

does contain must be sufficient "to state a claim to relief that is plausible on its face."  *Twombly*,

550 U.S. at 570.  Thus, the pleader's factual allegations are only helpful to her to the extent that

it is plain to the reader how they provide plausible support for each of the pleader's claims.  Put

another way, in order to state a claim, a complaint must provide "not only 'fair notice' of the

nature of the claim, but also 'grounds' *on which the claim rests*."  *Id.* at 556 n.3 (emphasis

added).  It is not enough to cite one or more statutes and separately set forth several pages' worth

of factual allegations, without any attempt to show how the latter purport to support the former.

"Despite the liberality of modern rules of pleading, a complaint still must contain either direct or

inferential allegations respecting all the material elements necessary to sustain a recovery under

some viable legal theory."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (quotation omitted); s*ee*

*also Wilkerson v. New Media Technology Charter School Inc.*, 522 F.3d 315, 321 (3d Cir. 2008)

("The complaint must state enough facts to raise a reasonable expectation that discovery will

reveal evidence of [each] necessary element" of a plaintiff's claim).  Consequently, because the

Complaint in issue does not clearly set forth an exhaustive list of Plaintiff's claims, including the

elements of each of her causes of action, let alone delineate which factual allegations support

which of her claims, the Court finds that the Complaint is insufficient under Rule 12(b)(6).

### III. Opportunity for Amendment

Plaintiff concludes her response brief by requesting that, in the event the Court finds her Complaint subject to dismissal on its merits, she be allowed leave to amend. In general, "the grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v. Davis,* 371 U.S. 178, 182 (1962). In exercising this discretion, however, "the court must heed Rule 15(a)'s direction that leave to amend 'shall be freely given when justice so requires.'" *Staats v. Cobb*, 455 Fed. Appx. 816, 817 (10th Cir. 2011) (quoting Fed. R. Civ. P. 15(a)); *see also Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We reiterate that the district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim."). Here, Defendants proffer no reason why leave to amend should be denied at this early stage of the litigation, and the Court is not prepared to cite Plaintiff's counsel's own admitted mistakes as the basis for denying Plaintiff an opportunity to test her claim on the merits. *See Staats*, 455 Fed. Appx. at 818 (noting that leave to amend should be granted unless "apparent grounds to deny leave" exist, "such as undue delay, repeated failure to cure deficiencies in the pleadings, or undue prejudice to the opposing party").

Implicit in the Court's earlier finding that Plaintiff's Complaint against Summit should be dismissed without prejudice is the guarantee that Plaintiff be allowed to file a new action and, this time, properly effect service under Rule 4(m). While requiring Plaintiff to file a new suit against Summit would be functionally similar to her filing an amended complaint, it would also require Plaintiff to either incur new filing fees or make out an application to proceed in forma pauperis, and would require the Court to inevitably consider a motion by one or both parties to combine the two actions. Thus, the Court finds that the better course is to permit Plaintiff to amend her original Complaint as a matter of course under Rule 15(a)(2), and to serve a copy of

the Amended Complaint on both Defendants in a timely manner.


### CONCLUSION

IT IS THEREFORE ORDERED that Defendants' *Motion to Dismiss Complaint* (Doc. 7)

is DENIED.


_____
Judith C. Herrera
United States District Court Judge

13